NO.
12-05-00418-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

CHARLES WILLIAM RIDER,        §                      APPEAL FROM THE 307TH

APPELLANT

 

V.        

§                      JUDICIAL
DISTRICT COURT OF

THE OFFICE OF THE
ATTORNEY

GENERAL AND JUDY A.
FALCON,

F/K/A JUDY ANNETTE
RIDER,

APPELLEES §                      GREGG
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Appellant
Charles William Rider appeals from an order confirming child support arrearage.
On appeal, Rider presents five issues. 
We affirm.

 

Background

            Rider
and Judy Falcon (previously Rider) were divorced in Texas in 1981.  Under the terms of the divorce decree, Rider
was ordered to pay child support for the couple’s minor children, C.A.R. and
C.W.R., IV, in the amount of $250.00 a week. 
At some point, Rider moved to California and failed to pay child support
as ordered.  In 1984, the Attorney
General of Texas filed a petition in the Superior Court of California, Monterey
County, for registration of a foreign support order under the Uniform
Reciprocal Enforcement of Support Act (“URESA”).  According to the Attorney General, Falcon’s
rights to child support had been assigned to the State of Texas, and the
Attorney General requested that its child support order be registered,
confirmed, and enforced.  The petition
alleged that Rider’s arrearages were $35,250.00 as of February 10, 1984.  On March 8, 1985, after a hearing and
stipulation by the parties, the court registered and confirmed the 1981 child
support order and ordered that Rider pay $150.00 monthly child support for each
minor child.  Additionally, the court
ordered Rider to pay arrearages totaling $12,300.00 at the rate of $50.00 a
month.  All payments were to be made to a
district attorney in California before being forwarded to Texas. 

            On
October 16, 1987, the Attorney General informed Rider that because the
California court found his arrearages to be “only” $12,000.00, the office had
adjusted Rider’s arrearages to that amount. 
On October 6, 2004, the Attorney General filed a motion in the Texas
trial court that granted the divorce decree, seeking to confirm child support
arrearages against Rider in the amount of $328,031.30.[1]  In response, Rider filed a special appearance
and plea to the jurisdiction, alleging that Texas lost, or no longer had,
continuing exclusive jurisdiction to modify its order or continuing
jurisdiction to enforce its order. 
Subject to his special appearance, Rider also filed a motion to transfer
and response to the Attorney General’s motion. 
In his response, Rider entered a general denial and alleged estoppel,
laches, and res judicata as affirmative defenses.  At trial, Falcon admitted that in 1989, she
moved for a few months to California and Virginia before returning to Texas. 

            The
trial court found that Rider’s arrearages were $237,705.85 and ordered him to
pay the child support judgment at the rate of $520.00 a month.  In its findings of fact and conclusions of
law, the trial court found as follows:

 

1.             That
Rider was in arrears on his child support obligation according to the 1981
divorce decree as of February 1, 1985.

 

2.             That
the amount of arrearages as of February 1, 1985 was $12,300.00 as determined by
a stipulation of the parties and approved by a California superior court
on  March 8, 1985.

 

3.             That
the California court was acting under the authority provided by URESA.

 

4.             That
the California court ordered Rider to pay $150.00 a month for each child
beginning March 1, 1985, as current child support.

 

5.             That
there have been no intervening or superseding orders.

 

6.             That
URESA does not provide for modification of previous support orders, but instead
provides cumulative additional remedies. Thus, the California order, although
altering the current support amount, did not amount to a modification of [the]
original obligation set forth in the divorce decree.

 

7.             That
the California order did not modify the Texas divorce decree for purposes of
calculating subsequent arrearages, as the California order did not specifically
provide that it superseded or modified the original order. The California court
had the power to determine the arrearage at the time of hearing, but the Texas
divorce decree controlled the subsequent arrearage calculation. 

 

 

This appeal followed.

 

Jurisdiction

            In
his third and fourth issues, Rider argues that Texas lacked jurisdiction under
the Uniform Interstate Family Support Act (“UIFSA”) to confirm and enter
judgment for the alleged child support arrearages.  He also contends that the California court
modified the Texas child support decree and, thus, was the last court of
continuing jurisdiction.  Further, he
contends that if the Texas court had jurisdiction to enter judgment for the
alleged child support arrearages, we should determine that he owed a lesser amount.  The Attorney General argues that Rider has
confused subject matter jurisdiction to enforce the Texas decree with
continuing, exclusive jurisdiction to modify the order.  Further, under URESA, the Attorney General
contends that the California court’s support order did not supersede or nullify
the support order in the Texas divorce decree and that the arrearages accrued
under both orders were enforceable.

Applicable Law

            The
California court registered and confirmed the Texas child support order on
March 8, 1985.  The version of URESA in
effect in March of 1985 applies to the determination of a Texas court’s power
to enforce and modify its own order. See Act of July 19, 1987, 70th
Leg., 2d C.S., ch. 49, §§ 1-2, 1987 Tex.
Gen. Laws 145, 158, amended by Act of May 26, 1993, 73d Leg.,
R.S., Ch. 971, § 1, 1993 Tex. Gen. Laws
4212, 4235 (adopting the Revised Uniform Reciprocal Enforcement of Support Act
(“RURESA”) to replace URESA and stating that RURESA applies only to an order,
decree, or judgment entered on or after November 1, 1987); Cowan v. Moreno,
903 S.W.2d 119, 121-22 (Tex. App.–Austin 1995, no writ).  Under this version of URESA, a Texas court
could not exercise its continuing jurisdiction to modify any part of its order
if the child and all parties had established and continued to maintain their
principal residence or home state outside this state.  Act of May 2, 1983, 68th Leg., R.S., ch. 160,
§ 6, 1983 Tex. Gen. Laws 691,
707, amended by Act of July 19, 1987, 70th Leg., 2d C.S., ch. 49, § 1,
1987 Tex. Gen. Laws 145,
158,  amended by Act of May 26,
1993, 73d Leg., R.S., Ch. 971, § 1, 1993 Tex.
Gen. Laws 4212, 4235.  But its
power to enforce and enter a judgment on its order was not affected.  Act of May 2, 1983, 68th Leg., R.S., ch. 160,
§ 6, 1983 Tex. Gen. Laws 691, 707
(amended 1987 & 1993).  Further,
URESA proceedings were ancillary proceedings that did not preclude a party from
an action to enforce the original order. State v. Borchers, 805
S.W.2d 880, 882 (Tex. App.–San Antonio 1991, writ denied). 

            Further,
no order of support issued by a court of this state when acting as a responding
state[2]








 superseded any other order of support, but the
amounts for a particular period paid pursuant to either order should be
credited against amounts accruing or accrued for the same period under
both.  Act of May 25, 1973, 63d Leg.,
R.S., ch. 543, § 1, 1973 Tex. Gen. Laws
1411, 1440, amended by Act of July 19, 1987, 70th Leg., 2d C.S., ch. 49,
§ 1, 1987 Tex. Gen. Laws 145,
158,  amended by Act of May 26,
1993, 73d Leg., R.S., Ch. 971, § 1, 1993 Tex.
Gen. Laws 4212, 4235.  Thus, the
language of the statute itself contemplated the contemporaneous existence of
two valid support orders providing for child support payments in different
amounts.  Borchers, 805
S.W.2d at 881-82. Additionally, remedies under URESA were in addition to and
not in substitution for any other remedies even though prior orders of support
existed in this state or any other jurisdiction.  Act of May 31, 1981, 67th Leg., R.S., ch.
356, § 2, 1981 Tex. Gen. Laws
945, amended by Act of July 19, 1987, 70th Leg., 2d C.S., ch. 49, § 1,
1987 Tex. Gen. Laws 145, 158, amended
by Act of May 26, 1993, 73d Leg., R.S., Ch. 971, § 1, 1993 Tex. Gen. Laws 4212, 4235.  This provision, however, did not prevent a
responding court from modifying the amount of support, i.e., entertaining an
independent action to determine the proper amount of support to be payable in
the future.  Whitehead v. Whitehead,
735 S.W.2d 534, 536 (Tex. App.–Tyler 1987, no writ).  By providing for the crediting of payments
against amounts accruing under separate orders of support, separate and
independently valid orders of support could exist that provided for payment of
different amounts.  Id. 

            Under
the law in effect on the date the Attorney General filed its motion to confirm
child support arrearages, the trial court retained jurisdiction to confirm the
total amount of child support arrearages and render judgment for past due child
support until the date all current child support, medical support, and child
support arrearages, including interest and any applicable fees and costs, had
been paid.  Act of May 27, 1999, 76th
Leg., R.S., ch. 556, § 15, 1999 Tex.
Gen. Laws 3058, 3062 (amended 2005) (current version at Tex. Fam. Code An n. §
157.005(b)(Vernon Supp. 2006)). 

Analysis

            In
1981, Rider and Falcon were divorced and the trial court ordered Rider to pay
child support.  In 1985, the California
court, as a responding court, registered and confirmed the 1981 order and also
ordered Rider to pay child support, albeit a different amount.  Under the version of URESA in effect at the
time, the Texas trial court had continuing, jurisdiction to enforce and enter a
judgment on the child support order, but not to modify it.  See Act of May 2, 1983, 68th Leg., R.S.,
ch. 160, § 6, 1983 Tex. Gen. Laws
691, 707 (amended 1987 & 1993). 
Further, even if the children, Rider, and Falcon maintained their
residence outside of Texas, the trial court’s power to enforce its order was
unaffected.  See Act of May 2,
1983, 68th Leg., R.S., ch. 160, § 6, 1983 Tex.
Gen. Laws 691, 707 (amended 1987 & 1993).

            Rider
argues that under UIFSA, the trial court lost continuing jurisdiction in 1989
when Falcon and the children moved from Texas. We disagree.  Under UIFSA, the current system of interstate
enforcement of child support orders, even if all parties and the child no
longer reside in Texas, the support order continues in existence and is fully
enforceable unless and until a modification takes place.  Commissioner’s Official Comment to UIFSA
Section 205, reprinted in John L.
Sampson et al., Texas Family Code Annotated 811 (Aug. 2007 ed.).
Further, the state of the residence of the obligor, the individual obligee, or
the child for whose benefit the support order was issued affects only the
exercise of continuing, exclusive jurisdiction of a tribunal of this state to
modify its order.  See Tex. Fam. Code Ann. § 159.205(a)(1)
(Vernon Supp. 2006).  Thus, under UIFSA,
the trial court’s order was fully enforceable even if the minor children,
Rider, and Falcon no longer resided in Texas. 
See Commissioner’s Official Comment to UIFSA Section 205, reprinted
in John L. Sampson et al., Texas
Family Code Ann. 811 (Aug. 2007 ed.). 

            Rider
also argues that the California court had continuing jurisdiction because it
modified the Texas child support order. 
Under URESA, the California court had jurisdiction to modify the amount
of support to be payable by Rider in the future.  See Whitehead, 735 S.W.2d at
536.  The version of URESA in effect in
1985 contemplated the contemporaneous existence of two valid support orders
providing for child support in different amounts.  See Borchers, 805 S.W.2d at
881-82.  Thus, the California and Texas
orders were valid support orders even though Rider was ordered to pay different
amounts of child support under each order. 
Under URESA, payments were to be credited against amounts accruing under
separate orders of support.  See Whitehead,
735 S.W.2d at 536; Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, 1973 Tex.
Gen. Laws 1441, 1440 (amended 1987& 1993). 
Rider does not contend that amounts were not properly credited under
both orders of support. In its findings of fact, the trial court based Rider’s
beginning arrearages on the $12,300.00 determined by the California court, a
lesser amount than that alleged by the Attorney General of Texas in 1984.  However, the California order did not
supersede the Texas child support order and, thus, the trial court did not err
in determining that the Texas child support order controlled its calculation of
arrearages after 1984.  See Whitehead,
735 S.W.2d at 536. 

            Further,
when the Attorney General filed its motion in 2004, the trial court had
jurisdiction to confirm the total amount of Rider’s child support arrearages
and render judgment for past due child support until all child support
arrearages were paid.  See Act of
May 27, 1999, 76th Leg., R.S., ch. 556, § 15, 1999 Tex. Gen. Laws 3058, 3062 (amended 2005). Because the
Attorney General’s motion  sought
enforcement, not modification, the trial court had jurisdiction to confirm the
amount of Rider’s arrearages, enter a judgment on those arrearages, and
calculate arrearages according to the Texas child support order.  Accordingly, we overrule Rider’s third and
fourth issues.

 

Affirmative
Defenses

            In
his first and second issues, Rider argues that it was not “just, honest and
fair dealing to render judgment” on the Attorney General’s motion to confirm
child support arrearages.  He further
contends that the Attorney General is barred from collecting child support
arrearages in Texas because of laches and estoppel.  The Attorney General argues that Rider’s
estoppel and laches defenses fail because the Office of the Attorney General,
as a state agency, is not subject to either defense.

            According
to section 231.109 of the Texas Family Code, an attorney employed to provide
Title IV-D services represents the interests of the state and not the interest
of any other party.  Tex. Fam. Code Ann. § 231.109(d)
(Vernon Supp. 2006).  The Office of the
Attorney General is designated as the state’s Title IV-D agency.  Tex.
Fam. Code Ann. § 231.001 (Vernon 2002). Subject to certain exceptions
that are not applicable here, the general rule is that when a unit of
government is exercising its governmental powers, it is not subject to
estoppel.  See Bowman v.
Lumberton Indep. Sch. Dist., 801 S.W.2d 883, 888 (Tex. 1990).  As the Title IV-D agency, the Office of the
Attorney General is a unit of government exercising its governmental
powers.  See Bowman, 801
S.W.2d at 888.  Thus, the Attorney
General is not subject to the defense of estoppel. 

            In
actions brought under the Texas Family Code, the doctrine of laches does not
apply, unless some extraordinary circumstances exist that would render
inequitable the enforcement of the petitioner’s right after a lengthy
delay.  Reyna v. Attorney General,
863 S.W.2d 558, 559 (Tex. App.–Fort Worth 1993, no writ).  The version of section 157.005, subsection
(b) of the Texas Family Code in effect on October 6, 2004 provided that the
court retained jurisdiction to confirm the total amount of child support
arrearages and render judgment for past due child support until the date all
current child support, medical support, and child support arrearages, including
interest and any applicable fees and costs, had been paid.  Act of May 27, 1999, 76th Leg., R.S., ch.
556, § 15, 1999 Tex. Gen. Laws
3058, 3062 (amended 2005). 

            Rider
complains that the Attorney General waited twenty-four years to file an action
to confirm his child support arrearages. 
At the time of the Attorney General’s motion, however, there was no
statute of limitations applicable to a court’s jurisdiction to confirm and
render judgment for child support arrearages other than payment of child
support arrearages.  See  Act of May 27, 1999, 76th Leg., R.S., ch.
556, § 15, 1999 Tex. Gen. Laws
3058, 3062 (amended 2005).  Laches should
not bar an action on which limitations has not run unless allowing the action “would
work a grave injustice.”  Caldwell
v. Barnes, 975 S.W.2d 535, 538 (Tex. 1998) (quoting Culver v.
Pickens, 142 Tex. 87, 176 S.W.2d 167, 170 (1943)).  Other than length of time, Rider does not
point to any injustice he suffered because the Attorney General waited
twenty-four years to file its motion. Thus, Rider’s laches defense fails on the
merits. Accordingly, we overrule Rider’s first and second issues.

 

Default
Judgment

            In
his fifth issue, Rider argues that the 1981 default judgment should be reversed
and held to be of no force and effect because the making of a record of
testimony was waived by the parties with the consent of the court.  The 1981 divorce decree stated that Rider did
not appear and wholly made default.  A
party who did not participate in the hearing that resulted in the judgment
complained of and who did not timely file a postjudgment motion or request for
findings of fact and conclusions of law, or a notice of appeal within the time
permitted by Texas Rule of Appellate Procedure 26.1(a), may file a restricted
appeal.  Tex. R. App. P. 30.  In
a restricted appeal, the notice of appeal must be filed within six months after
the judgment or order is signed. Tex. R.
App. P. 26.1(c).  Because Rider
did not participate in the hearing and did not file any of the documents
identified in Rule 30, he could have filed a notice of restricted appeal.  See Tex.
R. App. P. 30.  He did not do so,
and therefore has waived his complaint.[3]  Accordingly, we overrule Rider’s fifth issue.

 

Disposition

            The
judgment of the trial court is affirmed.

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

Opinion
delivered October 17, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

(PUBLISH)











[1] The Attorney General alleged that Rider’s prior
arrearage of court ordered child support as of October 1, 1981 was $2,250.00.
Since October 1, 1981, Rider’s accrued child support was $174,500.00 and his
accrued interest was $190,849.43. Rider had paid $39,568.18 in child support
since October 1, 1981 and, thus, his total arrearage as of August 17, 2004 was
$328,031.30.





[2] A “responding state” means any state in which
any proceeding pursuant to the proceeding in the initiating state is or may be
commenced.  Act of May 25, 1973, 63d
Leg., R.S., ch. 543, § 1, 1973 Tex. Gen.
Laws 1411, 1434, amended by Act of July 19, 1987, 70th Leg., 2d
C.S., ch. 49, § 1, 1987 Tex. Gen. Laws
145, 158, amended by Act of May 26, 1993, 73d Leg., R.S., Ch. 971, § 1,
1993 Tex. Gen. Laws 4212, 4235. 





[3] The paragraph stating that the making of a
record of testimony was waived appears to be crossed out with two sets of
initials beside it.  Therefore, the
judgment does not show that no record of the proceedings was made.  See Tex.
Fam. Code Ann. § 105.003(c) (Vernon 2002) (record shall be made in
such cases unless waived by parties with consent of court).